## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION


JAMES HUGHES                                                    Plaintiff

v.                              4:08CV00545 JMM/HDY

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                        Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, James Hughes, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits and Supplemental Security Income, based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *42 U.S.C. § 423(d)(1)(A).  *42 U.S.C. § 1382(a)(3)(A).  *42 U.S.C. §§ 423(d)(1)(A); 1382(a)(3)(A).*  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3); 1382(a)(C)(I).

Plaintiff alleged that he was limited in his ability to work by a bulging disk, degenerative disk disease, mental stress, depression, high blood pressure and diabetes. (Tr. 103) The Commissioner found that he was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through June 8, 2007, the date of his decision. (Tr. 18-19) On April 23, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 2-5) Plaintiff then filed his complaint initiating this appeal. (Docket #3)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 35 years old at the time of the hearing. (Tr. 23) He completed the tenth grade in school. (Tr. 25) He has past relevant work as a forklift operator. (Tr. 37, 87-88, 104)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step

---

[1]The Hon. Wendell C. Fowler.

3

involves a determination of whether the claimant is involved in substantial gainful activity.   20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2006).   If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id. at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.   Id. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If not, benefits are denied.  Id.  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  Id. at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment.  Id., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded.  Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made.   Id., §§ 404.1520(a)(4); 416.920(a)(4).  This residual functional capacity assessment is utilized at Steps 4 and 5.  Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work.  Id., §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).   If so, benefits are denied.  Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education

and work experience.  Id., §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).
If so, benefits are denied; if not, benefits are awarded.  Id.

The ALJ found that Plaintiff had not engaged in substantial
gainful activity since his alleged onset date.[2]  (Tr. 12)  He found
that Plaintiff had a "severe" impairment, lumbar back disorder, but
that he did not have an impairment or combination of impairments that
met or equaled a Listing.  (Tr. 12-13)  He judged that Plaintiff's
allegations regarding his symptoms were not entirely credible.  (Tr.
14)

The ALJ found that Plaintiff retained the residual functional
capacity for a restricted range of light work.  (Tr. 13)  The ALJ
found Plaintiff unable to perform any of his past relevant work.
(Tr. 17)  Based on the testimony of a vocational expert witness in
response to a hypothetical question, the ALJ found that there were a
significant number of jobs in the economy which Plaintiff could
perform, notwithstanding his limitations, for example, assembler.
(Tr. 18)  Thus, the ALJ concluded that Plaintiff was not disabled.
Id.

Plaintiff contends that the ALJ's residual functional capacity

_____

[2]There was some confusion about his alleged onset date.
Plaintiff originally (on this application) alleged an onset of
October 31, 2002.  (Tr. 80)  At the hearing, Plaintiff responded in
the affirmative to a leading question that he could no longer work as
of November 4, 2006.  (Tr. 24)  He then responded in the affirmative
to an onset date of November, 2004.  Id.  The onset date was
ultimately amended to November 15, 2004.  (Tr. 25)  The ALJ treated
April 4, 2004, as the amended onset date.  (Tr. 12, 14, 18)  (April
4, 1971, was Plaintiff's date of birth.  (Tr. 17, 80))  That error
was harmless.  The ALJ just considered a longer period of time.

determination was not supported by substantial evidence. (Br. 8-12) He also argues that the ALJ did not adequately explain his residual functional capacity determination. (Br. 12-13) He points to the opinion of Patricia A. Knott, M.D., who consultatively examined Plaintiff after the administrative hearing. (Tr. 351-54) She also completed a Medical Source Statement of Ability to Do Work-related Activities (Physical). (Tr. 356-58) Plaintiff's argument is unpersuasive. Dr. Knott also found that Plaintiff could occasionally lift/carry 20 pounds, frequently ten. (Tr. 356) Those restrictions coincide with the ALJ's conclusion that Plaintiff could perform light work. Her physical examination of Plaintiff revealed 5/5 motor strength[3] throughout upper and lower extremities. (Tr. 353) She observed no atrophy to his upper or lower extremities. Id. She thought he could stand/walk less than two hours in an eight-hour workday, although she did not explain that opinion as requested on the form. (Tr. 356) She also offered her opinion that he could sit less than six hours in an eight-hour workday, and would need to periodically alternate sitting and standing. (Tr. 357) Both of these restrictions were slightly greater than the ALJ's residual functional capacity determination. The ALJ noted that fact, but found her opinion to be less than persuasive because she accepted

---

[3]One useful scale for grading muscle strength assigns 0 to no visible muscle contraction, 1 to trace movement, 2 to limb movement when gravity is eliminated, 3 to movement against gravity but not resistance, 4 to movement against resistance supplied by the examiner and 5 to normal strength. The Merck Manual 1751 (18th ed. 2006).

some of Plaintiff's allegations about his limitations at face value rather than basing her limitations on objective criteria.  (Tr. 17)

The ALJ must determine the claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations.  Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005); Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

Plaintiff testified that he could sit up to 15 minutes, stand five to ten.  (Tr. 31)  He could lift only five to ten pounds, and could not push or pull.  (Tr. 32)  He needed the option to sit, stand or lie down.  (Tr. 31)  He testified that he was never without pain, and it was especially bad during the winter.  (Tr. 28-29)  On January 2, 2006, he went to the emergency room complaining of back pain after having been duck hunting that morning.  (Tr. 286)  On a form, he indicated that he "very seldom" hunted, fished, played with his children and played with his dog.  (Tr. 119)  On that same form, he indicated that he drove and shopped for groceries and household supplies.  (Tr. 118)  He also watered his garden and fed his snake. (Tr. 116-17)  He had no problem with personal care.  (Tr. 116)

In January of 2003, Plaintiff went to the emergency room with complaints of chest pain.  (Tr. 251)  He gave a history of pneumonia, hypertension and gastroesophageal reflux, but did not mention back pain.  Id.  He was neurologically intact.  (Tr. 252)  Strength was 5/5 bilaterally in upper and lower extremities.  Id.  Gait and

sensation were within normal limits.  <u>Id.</u>   An emergency room record dated May 20, 2005, noted, "5/5 motor in his upper and lower extremities.  Deep tendon reflexes are symmetric.  No focal deficit noted." (Tr. 295)  A year later, May 19, 2006, he had a normal gait; there was no evidence of atrophy; he had normal muscle strength and tone.  (Tr. 279)  He was neurologically intact.  <u>Id.</u>

A March 2005[4] MRI of the lumbar spine demonstrated "mild broad annular disc bulging at L5-S1 with mild impression upon the pre-thecal fat and mild narrowing of the neural foramina on the right."

A second MRI of the lumbar spine was performed February 15, 2006.  (Tr. 305)  In pertinent part, it read as follows:

FINDINGS: The vertebral alignment is normal. No intrathecal abnormality is observed.

L1-2: No disk abnormality.

L2-3: No disk abnormality.

L3-4: Minimal disk bulge causing minimal flattening of thecal sac.

L4-5: Minimal disk bulge causing minimal flattening of thecal sac.

L5-S1: Minimal dorsal midline protrusion of bulging disk creates mild indentation on right lateral recess.

IMPRESSION: Lumbar spondylosis[5] as described.

<u>Id.</u>

---

[4]One place on the report say "3/21/06," but six places indicate "2005."

[5]Ankylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature.  <u>PDR Medical Dictionary</u> 1813 (3d ed. 2006).

Substantial evidence in the record as a whole supports the ALJ's residual functional capacity determination.  Plaintiff's argument seeks to place the burden of proof on the Commissioner.  It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity.  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Masterson v. Barnhart, 383 F.3d 731, 737 (8th Cir. 2004); Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

Plaintiff contends that the ALJ erred at Step 2 of the sequential evaluation process in utilizing a "significantly limiting" standard rather than a "de minimis" standard.  (Br. 14-15)  The ALJ followed the regulations.  (Tr. 11-13)  Plaintiff places undue emphasis on the distinction between impairments that are "severe" and those that are not.  Once a claimant gets past the Step 2 threshold of having a "severe" impairment, the ALJ considers all impairments, including those that are less than "severe," in determining the claimant's residual functional capacity.  20 C.F.R. §§ 404.1545(e); 416.945(e) (2006); Social Security Ruling 96-8p, at 5.  The ALJ cited and utilized the correct standard for determining whether Plaintiff's impairments were "severe."  (Tr. 11-13)

Plaintiff argues that the ALJ's decision should be reversed because he did not supply rationale supporting his determination that

Plaintiff did not meet a Listing.  (Br. 15-16)  The ALJ's lack of elaboration of his conclusion that Plaintiff did not meet a Listing does not require reversal where, as here, the record supports the ALJ's conclusion.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1037 (8th Cir. 2001). Plaintiff has the burden of showing that he met a Listing.  <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1070 (8th Cir. 2004); <u>Pyland v. Apfel</u>, 149 F.3d 873, 877 (8th Cir. 1998).  He did not meet that burden.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  <u>E.g.</u>, <u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996); <u>Pratt v. Sullivan</u>, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  <u>Richardson v. Perales</u>, 402 U.S. at 401; <u>see</u> <u>also</u> <u>Reutter ex rel. Reutter v. Barnhart</u>, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed

with prejudice.

     DATED this ____17____ day of June, 2009.


_____
UNITED STATES MAGISTRATE JUDGE